Opinion issued November 19, 2009









 







In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00481-CV

____________


GRAHAM MENSA-WILMOT, Appellant


V.


SMITH INTERNATIONAL, INC., Appellee






On Appeal from the 165th Judicial District Court

Harris County, Texas

Trial Court Cause No. 2007-15854






O P I N I O N

 Appellant, Graham Mensa-Wilmot ("Mensa-Wilmot") appeals from a take-nothing summary judgment rendered in favor of appellee, Smith International, Inc.
("Smith"). In five issues, Mensa-Wilmot contends we lack jurisdiction because his
amended petition added causes of action that were not addressed in the motions for
summary judgment; the trial court erred by rendering summary judgment on causes
of action not addressed in the motions for summary judgment; and the summary
judgment evidence on the breach of contract claim raised a fact issue concerning
whether Mensa-Wilmot properly exercised his stock options before he resigned. We
conclude that we have jurisdiction over this appeal, that the trial court did not err by
rendering summary judgment in favor of Smith on the claims pleaded in Mensa-Wilmot's late-filed amended petition, and that the trial court did not err by granting
summary judgment in favor of Smith on Mensa-Wilmot's breach of contract claim. 
We affirm.

Background

 Smith is a worldwide supplier of products and services for the oil and gas
industry. Mensa-Wilmot was an employee of Smith from 1994 until his resignation
in 2005. During his employment, Mensa-Wilmot entered into three Nonqualified
Stock Option Agreements ("NQSOA") under Smith's 1989 Long Term Incentive
Compensation Plan ("Plan"). Mensa-Wilmot was informed of the appropriate
procedures to exercise his stock options when he entered into the stock option
agreements.

 The Plan stipulated Mensa-Wilmot must be a Smith employee at the time when
the option is exercised. Specifically, the 1997 and 1999 NQSOAs described the time
during which the option could be exercised and then stated, "Anything to the contrary
herein notwithstanding, the option granted hereunder shall terminate immediately
upon the voluntary resignation by Employee . . . ." In the 2001 NQSOA, the language
is: "Notwithstanding anything to the contrary in Sections 1(c), 1(d), 1(e) or in any
other provisions of this Agreement, the option granted hereunder shall terminate
immediately upon the voluntary resignation by Employee . . . ." In addition, the Plan
provided, 

 Unless otherwise expressly provided in the Grantee's Incentive
agreement, with respect to a Grantee who is an Employee, in the event
of termination of the Grantee's Employment except resulting from his
Disability or Retirement . . . any vested Incentive Award shall expire on
the earlier of (A) the expiration date set forth in the Incentive Agreement
for such Incentive Award, or (B) the expiration of ninety (90) days after
the date of his termination of Employment.


 To exercise stock options, the Plan required Mensa-Wilmot to sign and deliver
written notice to Smith's secretary specifying the number of shares he desired and
how he wanted the stock to be issued. In pertinent part, the first NQSOA, dated
December 3, 1997, provides,

 [T]his option may be exercised by written notice signed by Employee
and delivered to the Corporate Secretary of the Company or sent by
certified mail addressed to the Company (for the attention of the
Corporate Secretary) at its corporate office in Houston, Texas. Such
notice shall state the number of shares of Common Stock as to which the
option is exercised and shall be accompanied by the full amount of the
purchase price of such shares.


The December 7, 1999 and December 4, 2001 NQSOAs both provide,

 [T]his option may be exercised by written notice signed by Employee,
or any trust, person or entity to whom Employee has transferred his
rights under this option in accordance with Section 7(g) of the Plan, and
delivered to the Corporate Secretary of the Company or sent by certified
mail addressed to the Company (for the attention of the Corporate
Secretary) at its corporate offices in Houston, Texas. Such notice shall
state the number of shares of Common Stock as to which the option is
exercised and shall be accompanied by the full amount of the purchase
price of such shares.


In addition to the stock options, the Plan identified several different types of incentive
awards, including "Restricted Stock Units." Section 2 of the Plan covered stock
options and Section 5 of the plan covered restricted stock units. Mensa-Wilmot
received 140 unvested restricted stock units under the Plan.

 On November 10, 2005, Mensa-Wilmot sent an e-mail informing his supervisor
Paul Cox of his resignation, effective one month later on December 10. Mensa-Wilmot states that, at about the same time he sent the notice of his resignation, he sent
a handwritten letter to Smith informing Smith of his intention to exercise his stock
options. 

 On November 22, 2005, Merrill Lynch sent an e-mail to Smith's employees
informing them that their restricted stock units would vest on December 7, 2005. The
email instructed the employees to open an account with Merrill Lynch so that, upon
vesting, the restricted stock units would be deposited into the employees' accounts. 

 On December 7, Merrill Lynch contacted Cay Price ("Price"), the Plan
administrator, informing her that Mensa-Wilmot did not open an account. After Price
unsuccessfully attempted to contact Mensa-Wilmot, she next contacted Jane Aynn
Prestenbach to determine Mensa-Wilmot's employment status with Smith. 
Prestenbach sent an e-mail to Mensa-Wilmot, forwarding the November 22 email
from Merrill Lynch. Prestenbach contacted Stuart Oliver, informing him that she was
unable to contact Mensa-Wilmot. Oliver sent Mensa-Wilmot an e-mail notifying him
that his restricted stock units vested and he needed to contact Prestenbach. The
Merrill Lynch e-mail was attached to Oliver's e-mail to Mensa-Wilmot. Upon
receiving the e-mail, Mensa-Wilmot spoke with Prestenbach. After that conversation,
Mensa-Wilmot contends he filled out the appropriate forms for opening an account
and returned it to Merrill Lynch. 

 Mensa-Wilmot contacted Price during the last week of December 2005 to
inquire about his stock options. Price informed Mensa-Wilmot he would need to send
a check to pay for the stock. Mensa-Wilmot sent the check. On December 30, Price
contacted Prestenbach to confirm Mensa-Wilmot's reason for termination from Smith
so she would know how to handle Mensa-Wilmot's stock options because the stock
options were treated differently depending whether the employee voluntarily resigned
or was terminated. After it was confirmed that Mensa-Wilmot resigned, Price
determined that Mensa-Wilmot did not follow the appropriate procedures to exercise
his stock options. 

 Mensa-Wilmot received a deposit into his Merrill Lynch account, but it was for 
$2,700, which was much less than he expected. He contacted Price and she informed
him that the size of the deposit was due to his failure to exercise his stock options in
accordance with the time line described in the agreement. Specifically, Mensa-Wilmot did not comply with the agreement because he did not declare an intent to
exercise his options before December 10, 2005.

 After filing this suit, Mensa-Wilmot moved for summary judgment on his
breach of contract claims. In his motion, Mensa-Wilmot said, "Smith has not put
forth any evidence demonstrating why there is not an enforceable and binding
contract in the form of the Agreements that should be honored." Mensa-Wilmot also
asserted he was entitled to summary judgment because the evidence conclusively
established he had exercised his options. Specifically, Mensa-Wilmot stated,

 Wilmot tendered his resignation to Smith on November 10, 2005.
From this point forward, there are numerous internal emails that are
exchanged at Smith evidencing as a matter of law that Wilmot's Stock
Options have vested and owing. [sic] As a matter of law, and upon
reviewing these emails it is evident that Wilmot has met his burden in
proving the elements of a breach of contract claim. In particular, these
internal Smith e-mails demonstrate an acknowledgement [sic] on
Smith's part that Wilmot's stock options are vested and owing, contrary
to their position in this litigation.


(Citations to summary judgment exhibits omitted).

 Smith filed a cross motion for summary judgment. In it, Smith asserted Mensa-Wilmot produced no evidence he timely exercised his stock options in the manner
specified in the NQSOAs, which was a condition precedent to Smith's contractual
obligations under the NQSOAs. Smith also asserted that because Mensa-Wilmot had
not fulfilled the condition precedent, Mensa-Wilmot had no evidence that Smith
breached the contract. Smith also asserted the evidence conclusively negated the
same two elements of Mensa-Wilmot's claim.

 After the submission of the summary judgment motions, and one week before
the trial court granted Smith's motion and denied Mensa-Wilmot's motion, Mensa-Wilmot filed an amended original petition to include claims for statutory fraud,
common-law fraud, and unjust enrichment. Mensa-Wilmot did not seek or obtain the
trial court's permission before filing his amended petition. The trial court granted
Smith's cross motion for summary judgment, rendered a final judgment that Mensa-Wilmot take nothing, and dismissed the lawsuit with prejudice.

Jurisdiction

 In his third and fourth issues, Mensa-Wilmot asserts this Court does not have
jurisdiction because the trial court's judgment is not a final judgment. Specifically,
Mensa-Wilmot contends his amended petition added theories of recovery that were
not addressed by Smith's motion for summary judgment.

 A. Law Concerning Final and Appealable Judgments

 An appeal may generally be taken only from a final judgment that disposes of
all pending parties and claims. Fresh Coat, Inc. v. Life Forms, Inc., 125 S.W.3d 765,
767 (Tex. App.--Houston [1st Dist.] 2003, no pet.). "[A] judgment issued without
a conventional trial is final for purposes of appeal if and only if either it actually
disposes of all claims and parties then before the court, regardless of its language, or
it states with unmistakable clarity that it is a final judgment as to all claims and all
parties." Lehmann v. Har-Con Corp., 39 S.W.3d 191, 192-93 (Tex. 2001). 
Language that a plaintiff take nothing by his claims, or that the case is dismissed,
shows finality if there are no other claims by other parties. Lehmann, 39 S.W.3d at
205.

 B. Analysis

 Here, three months after the submission of the summary judgment motions,
Mensa-Wilmot filed an amended original petition adding claims for statutory and
common law fraud and unjust enrichment. Mensa-Wilmot did not obtain the trial
court's permission before filing his amended petition.

 Smith did not amend its summary judgment to address Mensa-Wilmot's new
claims. Approximately one week after Mensa-Wilmot filed his amended petition, the
trial court signed an order stating,

 On this date, came for consideration Plaintiff's Motion for
Summary Judgment and Defendant's Cross-Motion for summary
Judgment in the above-referenced matter. Upon consideration and
review, the Court determines that Plaintiff's Motion for summary
Judgment is DENIED and DEFENDANT'S Cross-Motion for Summary
Judgment is GRANTED. Plaintiff shall take nothing in this lawsuit. 
This case is dismissed with prejudice. This is a final judgment.


 The judgment expressly states it is final. It also expressly orders that Mensa-Wilmot take nothing by his lawsuit and expressly dismisses the case. We conclude
that this judgment states with unmistakable clarity that it is a final order. See
Lehmann, 39 S.W.3d at 205 (stating order with language that plaintiff take nothing
by his claims, or that case is dismissed, shows finality if there are no other claims by
other parties). 

 Although the amended petition added claims not addressed by Smith's motion
for summary judgment, that fact does not make the trial court's judgment
interlocutory because the final judgment plainly resolved the entire case. As the
Supreme Court of Texas explains,

 [A]n order can be final and appealable when it should not be. For
example, an order granting a motion for summary judgment that
addressed all of the plaintiff's claims when it was filed but did not
address claims timely added by amendment after the motion was filed
may state unequivocally that final judgment is rendered that the plaintiff
take nothing by his suit. Granting more relief than the movant is entitled
to makes the order reversible, but not interlocutory. 


Lehmann, 39 S.W.3d at 204.

 To support his contention that the judgment in this case is not final, Mensa-Wilmot cites Coastal Terminal Operators v. Essex Crane Rental Corp., 133 S.W.3d
335 (Tex. App.--Houston [14th Dist.] 2004, order). In Coastal Terminal Operators,
the trial court held a hearing on a motion for summary judgment. 133 S.W.3d at 336. 
After the hearing and without seeking the trial court's permission, the nonmovant
filed a pleading asserting additional claims for the first time. Id. Approximately one
week after the additional claims were filed, the trial court granted the summary
judgment. Id. The court of appeals, citing the Texas Supreme Court in Guajardo v.
Conwell, 46 S.W.3d 862, 864 (Tex. 2001), held that a summary judgment is not final
unless it disposes of pleadings that were filed after the hearing, but before judgment. 
Coastal Terminal Operators, 133 S.W.3d at 338. 

 Coastal Terminal Operators and Guajardo are distinguishable from this case
because the language of those orders did not indicate finality, as compared to this
order that dismisses the lawsuit with a take-nothing judgment. See Guajardo, 46
S.W.3d at 864 ("There is no other language in th[e] judgment that indicates
finality . . . ."); Coastal Terminal Operators, 133 S.W.3d at 338 (judgment did not
dispose of all claims with "unmistakable clarity"). Here, the order incorporates the
unmistakably clear language that Lehmann identifies as manifesting an intent that the
judgment be final, specifically, that Mensa-Wilmot take nothing and that his case is
dismissed with prejudice. See Lehmann, 39 S.W.3d at 205.

 We overrule Mensa-Wilmot's third and fourth issues. 

Summary Judgment on Fraud and Unjust Enrichment Claims


 In his fifth issue, Mensa-Wilmot contends the trial court erred by "granting a
final summary judgment when there were other theories of recovery asserted that had
not been challenged in [Smith's] cross-motion for summary judgment." Mensa-Wilmot asserts the trial court erred by granting summary judgment in favor of Smith
because Smith did not amend its cross-motion for summary judgment to address the
claims for statutory fraud, common-law fraud, and unjust enrichment pleaded in
Mensa-Wilmot's amended petition. Smith responds that the trial court did not err by
failing to consider Mensa-Wilmot's amended pleadings filed three months after the
submission of the summary judgment and without permission of the trial court.


 A. Amended Pleadings and Summary Judgments 

 Rule 63 of the Texas Rules of Civil Procedure provides,

 Parties may amend their pleadings . . . by filing such pleas with the clerk
at such time as not to operate as a surprise to the opposite party; 
provided, that any pleadings, responses or pleas offered for filing within
seven days of the date of trial or thereafter, or after such time as may be
ordered by the judge under Rule 166, shall be filed only after leave of
the judge is obtained, which leave shall be granted by the judge unless
there is a showing that such filing will operate as a surprise to the
opposite party.


Tex. R. Civ. P. 63. A summary judgment hearing is a trial for purposes of rule 63.
Wheeler v. Yettie Kersting Mem'l Hosp., 761 S.W.2d 785, 787 (Tex. App.--Houston
[1st Dist.] 1988, writ denied); see Sosa v. Cent. Power & Light, 909 S.W.2d 893, 895
(Tex. 1995) (applying rule 63 to amendment filed before summary judgment hearing). 
In addition to the time period for filing an amended petition in rule 63, rule 166a
provides that a trial court shall render summary judgment if the pleadings and
summary judgment evidence "on file at the time of the hearing, or filed thereafter and
before judgment with permission of the court" show the movant is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c) (emphasis added).

 Although subject to the first requirement of rule 63 that an amendment must
be made "at such time as not to operate as a surprise to the opposite party," a party
may file an amended pleading outside seven days of the trial date freely, without
leave of court. Tex. R. Civ. P. 63; Sosa, 909 S.W.2d at 895; see also Judge David
Hittner & Lynne Liberato, Summary Judgments in Texas, 47 S. Tex. L. Rev. 409, 418
(2006). If an amended pleading is filed within seven days but before the hearing,
leave of court is required. See Houtex Ready Mix Concrete & Materials v. Eagle
Constr. & Envtl. Servs., L.P., 226 S.W.3d 514, 520 (Tex. App.--Houston [1st Dist.]
2006, no pet.). An appellate court, however, will presume leave was granted "when
a summary judgment states that all pleadings were considered, and when, as here, the
record does not indicate that an amended pleading was not considered, and the
opposing party does not show surprise." Cont'l Airlines, Inc. v. Kiefer, 920 S.W.2d
274, 276 (Tex. 1996); see also Hittner, supra at 418-19 (citing Kiefer, 920 S.W.3d
at 276 and 9029 Gateway S. Joint Venture v. Eller Media Co., 159 S.W.3d 183, 187
(Tex. App.--El Paso 2004, no pet.)). 

 Unlike amended pleadings filed within seven days before the summary
judgment hearing, there is no presumption that leave was granted when amended
pleadings are filed after the summary judgment hearing. After the summary
judgment hearing but before the trial court renders judgment, a party must obtain the
leave of the court to amend a pleading. Hittner, supra, at 419 (citing Tex. R. Civ. P.
166a(c) and Hussong v. Schwan's Sales Enters., Inc., 896 S.W.2d 320, 323 (Tex.
App.--Houston [1st Dist.] 1995, no writ)); see also Austin v. Countrywide Homes
Loans, 261 S.W.3d 68, 75 (Tex. App.--Houston [1st Dist.] 2008, pet. denied) ("Once
the hearing date for a motion for summary judgment has passed, the movant must
secure a written order granting leave in order to file an amended pleading."); C/S
Solutions, Inc. v. Energy Maintenance Services Group LLC, 274 S.W.3d 299, 307
(Tex. App.--Houston [1st Dist.] 2008, no pet.) (stating party that attempted to amend
pleadings "needed leave of court under Rule 63 because the summary-judgment
hearing had already been held"); see also Automaker, Inc. v. C.C.R.T. Co., 976
S.W.2d 744, 745 (Tex. App.--Houston [1st Dist.] 1998, no pet.) ("A nonmovant must
secure the court's permission if it files the amended pleading after the summary
judgment hearing.") (Emphasis in original). In contrast to the presumption we apply
to an amended pleading filed within seven days of the hearing, "[u]nless the record
shows that the trial court granted leave to file the pleading, the appellate court will
assume leave was denied." Austin, 261 S.W.3d at 76.

 Amended pleadings in the different categories described above are treated
differently. A proper amended pleading supersedes and replaces prior pleadings. 
FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Houston Sys., 255 S.W.3d 619, 633
(Tex. 2008) (citing Tex. R. Civ. P. 65). Thus, generally, (1) once a plaintiff has timely
amended his petition, or has done so with leave of court, to plead additional claims,
a defendant is not entitled to a summary judgment on the plaintiff's entire case, unless
the defendant amends or supplement its motion for summary judgment to address the
claims asserted in the amended pleading. Rotating Servs. Indus., Inc. v. Harris, 245
S.W.3d 476, 487 (Tex. App.--Houston [1st Dist.] 2007, pet. denied) (citing Blancett
v. Lagniappe Ventures, Inc., 177 S.W.3d 584, 592 (Tex. App.--Houston [1st Dist.]
2005, no pet.); Smith v. Atl. Richfield Co., 927 S.W.2d 85, 88 (Tex. App.--Houston
[1st Dist.] 1996, writ denied)).

 However, if a plaintiff seeks to amend in the seven-day period before the
summary judgment hearing and leave to amend was denied, or the presumption that
leave was granted does not apply, the amended petition is not timely and should not
be considered by the trial court. McIntyre v. Wilson, 50 S.W.3d 674, 684 (Tex.
App.--Dallas 2001, pet. denied); Domizio v. Progressive County Mut. Ins. Co., 54
S.W.3d 867, 875-76 (Tex. App.--Austin 2001, pet. denied). The same is true of a
pleading filed after the summary judgment hearing without leave of court; we do not
consider an amended pleading filed without the trial court's permission after the
summary judgment hearing. See Taylor v. Sunbelt Mgmt., Inc., 905 S.W.2d 743, 745
(Tex. App.--Houston [14th Dist.] 1995, no writ) (stating "we cannot consider
appellants' pleadings which were admittedly filed after the motion for summary
judgment hearing"); W. Tex. Gas, Inc. v. 297 Gas Co., 864 S.W.2d 681, 685 (Tex.
App.--Amarillo 1993, no writ) (holding trial court did not err by failing to consider
amended petition filed after hearing without leave of court). Because an amendment
that is not timely and not allowed by the trial court does not supersede the prior
petition, the summary judgment movant need not amend or supplement his motion to
address those claims. See Taylor, 905 S.W.2d at 745 (citing Tex. R. Civ. P. 166a(c)
and holding trial court did not err by granting summary judgment when new,
unaddressed claims were added by amended petition filed after hearing without leave
of court); W. Tex. Gas, Inc., 864 S.W.2d at 685 (same); see also Hittner, supra, at
419-20 (stating movant need not amend motion for summary judgment to address
amended pleadings if summary judgment filed after court-ordered deadline to amend
pleadings).

 B. Analysis 

 Here, Mensa-Wilmot filed his amended petition three months after the
summary judgment hearing. We presume that leave to amend was not granted unless
the record shows that the trial court granted leave. See Austin, 261 S.W.3d at 76. 
Nothing in the record indicates the trial court granted leave, or that Mensa-Wilmot
sought leave. We, therefore, cannot consider the claims added by Mensa-Wilmot's
amended petition. See Taylor, 905 S.W.2d at 745; W. Tex. Gas, Inc., 864 S.W.2d at
685.

 We hold the trial court did not err by rendering summary judgment in favor of
Smith because Mensa-Wilmot's additional claims were contained in an amended
petition that was filed without the trial court's permission after the summary judgment
hearing had been held. See Taylor, 905 S.W.2d at 745; W. Tex. Gas, Inc., 864 S.W.2d
at 685. 

 We overrule Mensa-Wilmot's fifth issue.

Summary Judgment on Breach of Contract Claim


 In his second issue, Mensa-Wilmot contends the trial court erred by granting
Smith's cross-motion for summary judgment because the summary judgment
evidence raised a fact issue concerning whether he properly exercised his options
under the stock option agreement. 

 In the motion for summary judgment that the trial court granted, Smith
contends that Mensa-Wilmot has no evidence of the elements of "breach of contract"
or "conditions precedent to performance" of his breach of contract claim, and that he
conclusively negated the same two elements. Specifically, Smith asserts "Mensa-Wilmot must prove that before the effective date of his resignation from [Smith] on
December 10, 2005, he sent [Smith's] Corporate Secretary a signed written notice of
his intention to exercise the stock options under the NQSOAs." Smith states, "Mensa-Wilmot failed to exercise his options in writing under the NQSOAs plain terms" and
Mensa-Wilmot "failed to comply with the procedures in [the] NQSOAs." Mensa-Wilmot responds to the motion for summary judgment by asserting that a fact issue
exists concerning whether he timely exercised his stock options and summary
judgment for Smith was therefore improper.

 A. Applicable Law

 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper only when the
movant establishes there is no genuine issue of material fact and that the movant is
entitled to judgment as a matter of law. Tex R. App. P. 166a(c). The motion must
state the specific grounds relied upon for summary judgment. Id. In reviewing a
motion for summary judgment, we must indulge every reasonable inference in favor
of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve
any doubts in favor of the nonmovant. Valence, 164 S.W.3d at 661. 

 We review a no-evidence summary judgment by construing the record in the
light most favorable to the nonmovant and disregarding all contrary evidence and
inferences. Patriacca v. Frost, 98 S.W.3d 303, 306 (Tex.App.--Houston [1st Dist.]
2003, no pet.). A trial court improperly renders a no-evidence summary judgment if
the nonmovant presents more than a scintilla of probative evidence to raise a genuine
issue of material fact. Greathouse v. Alvin Indep. Sch. Dist., 17 S.W.3d 419, 423
(Tex. App.--Houston [1st Dist.] 2000, no pet.).

 The essential elements in a suit for breach of contract are: (1) the existence of
a valid contract; (2) the plaintiff performed or tendered performance; (3) the
defendant breached the contract; and (4) the plaintiff was damaged as a result of the
breach. Bank of Tex. v. VR Elec., Inc., 276 S.W.3d 671, 677 (Tex. App.--Houston
[1st Dist.] 2008, pet. denied). Furthermore, a party seeking to recover under a
contract bears the burden of proving that all conditions precedent have been satisfied. 
CDI Eng'g Group, Inc. v. Admin. Exch., Inc., 222 S.W.3d 544, 548 (Tex.
App.--Houston [14th Dist.] 2007, pet. denied) (citing Associated Indem. Corp. v.
CAT Contracting, Inc., 964 S.W.2d 276, 283 (Tex. 1998)). In an option contract,
strict compliance with the provisions of the option contract is required. Besteman v.
Pitcock, 272 S.W.3d 777, 784 (Tex. App.--Texarkana 2008, no pet.); Tex. State
Optical, Inc. v. Wiggins, 882 S.W.2d 8, 10-11 (Tex. App.--Houston [1st Dist.] 1994,
no writ).

 B. Analysis

 Mensa-Wilmot contends his affidavit suffices to raise a fact issue concerning
whether he timely exercised his stock options. Specifically, Mensa-Wilmot relies on
the following statement in his affidavit: "During the second week of November 2005,
I sent a letter to Smith International, Inc. (Smith) from Dubai (UAE) informing Smith
of my intention to exercise my stock options." 

 In reviewing the evidence to determine whether summary judgment in favor of
Smith was proper, we must accept all Mensa-Wilmot's evidence as true and disregard
contrary evidence and inferences. See Valence, 164 S.W.3d at 661; Patriacca, 98
S.W.3d at 306. However, even accepting Mensa-Wilmot's affidavit as true, it does
not address whether he exercised the options in the manner specified by the
NQSOAs. The NQSOAs required "written notice signed by Employee" to be
"delivered to the Corporate Secretary of the Company or sent by certified mail
addressed to the Company (for the attention of the Corporate Secretary) at its
corporate office in Houston, Texas." Furthermore, to exercise the options, Mensa-Wilmot was required to "state the number of shares of Common Stock as to which the
option is exercised and shall be accompanied by the full amount of the purchase price
of such shares." Mensa-Wilmot's affidavit does not address whether he (1) delivered
the notice or sent it via certified mail, (2) stated the number of shares he wished to
purchase under the option, or (3) tendered the full amount of the purchase price. 
Because Mensa-Wilmot did not present summary judgment evidence that he
exercised his stock option as required by the NQSOAs, we hold there is no fact issue
and the trial court did not err by rendering summary judgment in favor of Smith. See
Besteman, 272 S.W.3d at 784 (requiring strict compliance with provisions of option
contract); Tex. State Optical, Inc., 882 S.W.2d at 10-11 (same).

 Mensa-Wilmot asserted at oral argument that there is an ambiguity concerning
the proper manner to exercise stock options and, therefore, his affidavit raises a fact
issue concerning whether he properly exercised his stock options. In support, Mensa-Wilmot identifies two documents introduced as summary judgment evidence. The
first, a prospectus covering the NQSOAs contained a section entitled "Manner of
Exercise." This section provides, in pertinent part,

 All options and stock appreciation rights are exercisable by written
notice to us specifying the number of shares being purchased,
accompanied in the case of the exercise of an option by payment in full
in cash or its equivalent acceptable to us. 


In addition, Mensa-Wilmot identifies a document from Smith entitled "Exercising
Your Nonqualified Stock Options." This document provides, in pertinent part, that
the options may be exercised by "[c]omplet[ing] and sign[ing] a Notice of Exercise
letter (each time you exercise) specifying the number of shares you wish to purchase,
and how you would like the stock to be issued (i.e. to you or your account with a
broker)."

 Mensa-Wilmot does not assert that either of these documents are part of the
NQSOAs. The cover page of the prospectus expressly states it is not an offer to sell
common stock of Smith. Furthermore, the second document from Smith expressly
provides, 

 This document is a summary only and is not meant to replace or amend
the terms of the Smith International, Inc. Long-Term Incentive Plan, as
amended, or executed Stock Option Agreements. Please refer to those
documents if there are any questions.


Because these documents are not part of the NQSOAs, they do not alter the way in
which Mensa-Wilmot was required to exercise his stock options under the NQSOAs. 
Assuming these two documents were part of the NQSOAs, Mensa-Wilmot's affidavit,
in which he asserts he sent a letter exercising the options, fails to show he complied
with the two documents because the documents required that he specify the number
of shares and include payment for the shares. 

 In addition, Mensa-Wilmot contends the e-mails introduced as summary
judgment evidence raise a fact issue on his claims. Specifically, Mensa-Wilmot
contends, "Multiple e-mail exchanges were made between [Mensa-Wilmot] and
[Smith's] employees regarding the stock options before December 10, 2005." Mensa-Wilmot also asserts,

 [Mensa-Wilmot] opened an account with Merrill Lynch specifically for
the stock options that he had elected to exercise after speaking with Jean
Aynn Prestenbach so that his stock options proceeds could be deposited
there. The reasonable inference is that the exercise of option letter had
been received by [Smith] in a timely manner.


 Mensa-Wilmot is mistaken. The email from Merrill Lynch to Smith on
November 22--and later forwarded to Mensa-Wilmot by Prestenbach and Oliver--
specifically referred to "restricted stock," not "stock options" as Mensa-Wilmot
contends. Specifically, the Merril Lynch email stated, "IMPORTANT NOTICE
REGARDING YOUR RESTRICTED STOCK GRANT[.] Merrill Lynch has been
selected as the broker to assist you in establishing an account to facilitate the
settlement process on the Restricted Stock vesting event on December 7, 2005." 
(Emphasis added). Oliver's e-mail referred to a "stock grant," not a "stock option." 
Because the emails do not refer to the stock options as Mensa-Wilmot contends, but
to the separate restricted stock units awarded under the Plan, the evidence does not
raise an issue concerning Mensa-Wilmot's exercise of his options. 

 We hold the evidence does not raise a fact issue concerning whether Mensa-Wilmot exercised his stock options as required by the terms of the NQSOAs.


 We overrule Mensa-Wilmot's second issue.

 In his first issue, Mensa-Wilmot asks, "Did the trial court err in granting the
appellee's cross-motion for summary judgment?" Within this issue, Mensa-Wilmot
presents no independent ground for reversal. Rather, Mensa-Wilmot expressly states
"the first issue--whether the trial court erred in granting summary judgment--is
common to all other issues raised. The more narrow issues behind this broad issue
are discussed individually throughout this brief." (Citation omitted). Because it
presents no independent ground or argument for reversal, we overrule Mensa-Wilmot's first issue. 

Conclusion

 We affirm the trial court's judgment. 




 Elsa Alcala

 Justice

 

Panel consists of Justices Keyes, Alcala, and Hanks.






1. There are exceptions to the general rule that are not applicable to this case. For
example, if the amended petition essentially reiterates previously pleaded causes of
action and a ground asserted in a motion for summary judgment conclusively negates
a common element of both the newly and previously pleaded claims, or the original
motion is broad enough to encompass the newly asserted claims, an amended or
supplemental motion for summary judgment is not necessarily needed. Rotating
Servs. Indus., Inc. v. Harris, 245 S.W.3d 476, 487 (Tex. App.--Houston [1st Dist.]
2007, pet. denied) (citing Blancett v. Lagniappe Ventures, Inc., 177 S.W.3d 584, 592
(Tex. App.--Houston [1st Dist] 2005, no pet.); Fraud-Tech, Inc. v. Choicepoint, Inc.,
102 S.W.3d 366, 387 (Tex. App.--Fort Worth 2003, pet. denied); Farah v. Mafrige
& Kormanik, P.C., 927 S.W.2d 663, 671-72 (Tex. App.--Houston [1st Dist.] 1996,
no writ); Judwin Props., Inc. v. Griggs & Harrison, 911 S.W.2d 498, 502 (Tex.
App.--Houston [1st Dist.] 1995, no writ)).