**Opinion issued May 9, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00332-CV

———————————

**METROPOLITAN CHRISTIAN METHODIST EPISCOPAL CHURCH,
Appellant**

**V.**

**FRANK VANN, BARNABAS INVESTORS, INC., JOHN OTTINGER, JR.,
SENIOR HOUSING SERVICES, INC., CORNERSTONE CAPITAL
ADVISORS, INC. AND GEORGE DIXON, AS THE PERSONAL
REPRESENTATIVE OF THE ESTATE OF CECIL BROOKS, Appellees**

On Appeal from the 157th District Court
Harris County, Texas
Trial Court Case No. 2008-41574

## MEMORANDUM OPINION

Metropolitan Christian Methodist Episcopal Church appeals from the trial

court's rendition of summary judgment in favor of appellees Frank Vann, Barnabas

Investors, Inc., John Ottinger, Jr., Senior Housing Services, Inc., and Cornerstone Capital Advisors, Inc., and from the dismissal for want of personal jurisdiction of George Dixon, the personal representative of the Estate of Cecil Brooks. The Church sued the appellees for fraud, breach of contract, and several other theories related to a plan to form an HMO for the Church to provide healthcare for its members. The Church secured funding for the plan by mortgaging its real property to Cornerstone Ministries, Inc., an entity related to the corporate appellees, which is not a party to this proceeding. The trial court dismissed Dixon for want of personal jurisdiction and rendered summary judgment in favor of the other appellees. We affirm.

## Background

### A.    Factual Background

Cecil Brooks and John T. Ottinger Jr. founded Cornerstone Ministries Investment, Inc. (CMI), a for-profit company that loaned money to faith-based businesses and institutions. Brooks and Ottinger served as employees, officers, and directors of CMI from its founding, and—Brooks in particular—controlled CMI and several affiliated businesses.

In 2003, Dr. Benjamin Woods of Universal Healthcare Integrated, Inc. (UHI) approached Cecil Brooks. Woods proposed that he and UHI start an HMO for low-income families through churches and other community organizations.

2

Brooks contacted Nick Howard, the president of Senior Housing Services (SHS), to bring SHS on as an investor. SHS provided "seed money" to UHI to explore the HMO business. Barnabas Investors, Inc. was formed—with Howard as its president—to be the investment company that would found and manage the HMOs under UHI and Woods's direction.

Later that year, CMI held a meeting in Houston to attract investors. As an incentive for churches to invest, it represented that, in addition to church members being able to utilize the HMO, a portion of the profits would be returned to participating churches for enhancing various church ministries and programs. Wallace Lockett, the Church's pastor, orally committed the Church to participate.

The following summer, Brooks contacted Lockett to obtain the Church's investment. Brooks arranged for CMI to loan money for the investment to the Church. The loan was secured by a deed of trust on real property owned by the Church. The proceeds of the loan were invested with Barnabas. Lockett averred that Brooks assured him that the Church would not have to make any payments on the loan and that, after a year, i.e., in 2005, the deed of trust on the property would be released.

Brooks utilized another of his and Ottinger's companies, Cornerstone Capital Advisors, Inc., to provide office and payroll functions for CMI and Barnabas. After receiving the Church's funds, Barnabas—acting through CCA—

repaid SHS and UHI for their investments in Barnabas. The Church alleges that Frank Vann, an employee of CCA and of CMI, is the person who made or authorized the transfers to SHS and UHI.

CMI did not release the lien on the Church's property in 2005. Instead, CMI filed for bankruptcy. When it did, Lockett hired an attorney to protect the Church's interest in the real property that secured the note. Later, in an adversarial proceeding in CMI's bankruptcy, the Church was sued over the unpaid balance on the note.

## B. Procedural Background

The Church sued Brooks, CCA, SHS, Barnabas, Ottinger, Howard, Vann, UHI, and Dr. Woods (and two other individuals affiliated with UHI). Brooks passed away, and the Church substituted George B. Dixon Jr. as the personal representative of Brooks's estate. The only parties to this appeal are: (1) Dixon; (2) Barnabas, CCA, SHS, and Ottinger (hereafter, collectively "Barnabas"); and (3) Vann.

In its live pleading, the Church asserted claims for breach of contract, fraud, violations of the Securities Act of 1933, unjust enrichment, negligence, violations of the Deceptive Trade Practices Act, and violation of the Insurance Code. Barnabas removed the case to federal court on the basis of diversity jurisdiction, and Dixon was served in the federal suit. While in federal court, Dixon sought

4

dismissal for want of personal jurisdiction. The federal court granted Dixon's motion. Following Dixon's dismissal, the federal court determined that it lacked subject matter jurisdiction and remanded the case.

CMI initiated an adversarial claim in the bankruptcy proceeding, seeking the unpaid balance of the loan to the Church. The state trial court determined that the outcome of the adversarial proceeding would affect this case and, accordingly, stayed this case pending the resolution of adversarial proceeding. Later, the Church moved to lift the stay, asserting that the adversarial proceeding had concluded with an agreed dismissal with prejudice of all claims and counterclaims and the Church receiving a release of the lien on its property.

Barnabas moved for summary judgment. It filed a no-evidence motion, asserting that the Church could provide no evidence of damages, an essential element of each of it claims, because it had received a release of lien and CMI had dismissed its claim for the loan balance with prejudice. The Church responded, but did not provide any evidence with its response. The trial court initially granted summary judgment for Barnabas and for Vann. Twenty-eight days later, the Church filed a motion for reconsideration and attached evidence. The trial court entered a new order, clarifying that the prior summary judgment did not cover Vann and that, because it did not dispose of the claims against Vann, it was an interlocutory order.

5

Vann moved for summary judgment on both traditional and no-evidence grounds. In the no-evidence portion of his motion, Vann identified each element of every cause of action asserted by the Church—except for the Insurance Code claim—and asserted the Church had no evidence of any. In his traditional motion for summary judgment, Vann argued that the alleged Insurance Code violation was not actionable as a matter of law. Vann also sought sanctions against the Church.

In its final order, the trial court granted Vann's motion for summary judgment, but expressly denied Vann's request for sanctions. The trial court severed the claims against the UHI defendants, and thus rendered a final judgment. The Church appealed, challenging each of the summary judgments and the dismissal of Dixon for lack of personal jurisdiction.

**Federal Court's Dismissal of Dixon for Lack of Personal Jurisdiction**

In its first and second issues, the Church contends that the federal district court erred by dismissing Dixon for lack of personal jurisdiction and the state trial court erred by refusing to determine that it had personal jurisdiction over Dixon.

**A. The Church's Argument**

The Church argues that because the federal court determined that it had no jurisdiction over the subject matter of the suit and remanded the case, its prior order dismissing Dixon for lack of personal jurisdiction is void. *See, e.g.*, *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 641 (Tex. 2009) (observing

6

that orders made without jurisdiction are void).  The Church contends that the state court should have determined whether it could properly exercise personal jurisdiction over Dixon.  In other words, the Church contends that a federal court must decide subject matter jurisdiction before it can determine an issue of personal jurisdiction.

The trial court disagreed.  In its order dismissing Dixon for lack of personal jurisdiction, the trial court found that "Judge Atlas's order dismissing [Dixon] . . . is not void because the Court later determined that it lacked subject matter jurisdiction. . . . Accordingly, [the Church] is barred and estopped from re-litigating this issue in this forum."

**B.     Discussion**

The United States Supreme Court has rejected the Church's argument that there is a "sequencing of jurisdictional issues," mandating that subject-matter jurisdiction be decided before personal jurisdiction.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563, 1570 (1999).   In *Ruhrgas*, the Supreme Court held that a district court did not err by deciding an issue of personal jurisdiction before determining subject matter jurisdiction.  *Id.* at 588, 119 S. Ct. at 1572.  It explained, "[A] court that dismisses on . . . non-merits grounds such as . . . personal jurisdiction, before finding subject-matter jurisdiction," does not violate any separation of powers principles between the federal and state judicial

7

systems. *Id.* at 584–85, 119 S. Ct. at 1570 (quoting *In re Papandreou*, 139 F.3d 247, 255 (C.A.D.C. 1998)). Because the Supreme Court has rejected the Church's argument that subject matter jurisdiction must be decided before personal jurisdiction, the federal court did not err in determining Dixon's challenge to personal jurisdiction before determining that it lacked subject matter jurisdiction. *See id.* at 588, 119 S. Ct. at 1572. We conclude the federal court's order dismissing Dixon was not void. And because the order was not void, it was a proper determination of the merits of the court's personal jurisdiction over Dixon, and should not be re-litigated. *See id.* at 585, 119 S. Ct. at 1571 (citing *Baldwin v. Iowa State Traveling Men's Assn.*, 283 U.S. 522, 524–27, 51 S. Ct. at 517–18 (personal jurisdiction ruling has issue-preclusive effect). Accordingly, we hold that the trial court properly refused to revisit the issue of whether personal jurisdiction over Dixon was proper.

We overrule the Church's first and second issues.

### Summary Judgment for the Barnabas Defendants

In its third issue, the Church argues that the trial court improperly granted Barnabas's no-evidence summary judgment on the element of damages.[1]

---

[1] The Church's third issue also addresses the summary judgment in favor of Vann, discussed separately below.

**A.      Arguments in Summary Judgment and on Appeal**

Barnabas moved for summary judgment on the ground that the Church could produce no evidence of damages.  Specifically, Barnabas pointed out that the Church's only theory of damages was that its real property was encumbered by a lien, and that the Church conceded that the lien had been released.  Thus, Barnabas asserted, the Church had no evidence of damages.

In its response, citing *Texas National Bank v. Karnes*, 717 S.W.2d 901 (Tex. 1986), the Church asserted it could recover both contract and tort damages— including exemplary damages—if it could prove both a breach of contract and an independent tort.  But the Church filed no evidence to support its response.

On appeal, the Church argues that a no-evidence summary judgment was improper for two reasons.  First, the Church contends the collateral source rule prevents Barnabas from relying on the release of the lien to establish that the Church was not damaged.  Second, the Church contends its attorney's fees and other costs expended in defending the adversarial claim are properly considered actual damages in this case.

**B.      Law Pertaining to No-evidence Motions for Summary Judgment**

Pursuant to Texas Rule of Civil Procedure 166a(i):

> After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of

9

proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

TEX. R. CIV. P. 166a(i). A motion for a no-evidence summary judgment is essentially a request for a pretrial directed verdict. *Imkie v. Methodist Hosp.*, 326 S.W.3d 339, 342 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006)). A motion that properly identifies an element, on which the nonmovant has the burden of proof, shifts the burden to the nonmovant to defeat the motion by presenting evidence that raises a genuine issue of material fact on the challenged element. *Id.* at 343 (citing *Mack Trucks, Inc.*, 206 S.W.3d at 582; *Landers v. State Farm Lloyds*, 257 S.W.3d 740, 744 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). "Absent a timely response, a trial court must grant a no-evidence motion for summary judgment that meets the requirements of Rule 166a(i)." *Id.* (citing TEX. R. CIV. P. 166a(i)). "If a nonmovant wishes to assert that, based on the evidence in the record, a fact issues exists to defeat a no-evidence motion for summary judgment, the nonmovant must timely file a response to the motion raising this issue before the trial court." *Id.* (citing *Landers*, 257 S.W.3d at 746); *see* TEX. R. CIV. P. 166a(i)).

Texas Rule of Civil Procedure 166a(c) provides, "*Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response.*" TEX. R. CIV. P. 166a(c)

10

(emphasis added). "Summary judgment evidence may be filed late, but only with leave of court." *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996), *quoted in Speck v. First Evangelical Lutheran Church of Houston*, 235 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2007, no pet.). If nothing in the record indicates the trial court granted leave to file the summary judgment response late, we presume that the trial court did not consider it. *Speck*, 235 S.W.3d at 815 (citing *Benchmark Bank*, 919 S.W.2d at 663; *INA of Tex. v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985)); *see also Imkie*, 326 S.W.3d at 343 (stating that under Rule 166a(c) response must be filed seven days before hearing).

A similar rule applies to pleadings. Rule 166a provides that a trial court shall render summary judgment if the pleadings and summary judgment evidence "on file at the time of the hearing, *or filed thereafter and before judgment with permission of the court*" show the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c) (emphasis added). A timely amended pleading, or an amended pleading filed with leave of court, that adds a claim generally requires a party moving for summary judgment to amend or supplement its motion for summary judgment to address the claims asserted in the amended pleading.[2] *Mensa-Wilmot v. Smith Int'l, Inc.*, 312 S.W.3d 771, 778 (Tex. App.—Houston [1st

---

[2] There are exceptions to this general rule—none of which apply to this case—such as where the motion for summary judgment applies equally to the claims added in the amended pleading. *See Mensa-Wilmot v. Smith Int'l, Inc.*, 312 S.W.3d 771, 779 n.1 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

11

Dist.] 2009, no pet.). An amended pleading that is filed after the summary judgment hearing but before the trial court grants summary judgment must be filed with leave of court. *Id.* (citing, *inter alia*, TEX R. CIV. P. 63, 166a(c)). If a party files an amended pleading after the summary judgment hearing, without leave of court, it should not be considered in determining the motion for summary judgment. *Id.* at 779; *see also Taylor v. Sunbelt Mgmt., Inc.*, 905 S.W.2d 743, 745 (Tex. App.—Houston [14th Dist.] 1995, no writ) (stating "we cannot consider appellants' pleadings which were admittedly filed *after* the motion for summary judgment hearing").

## C. Discussion

Barnabas filed a motion for summary judgment asserting that there was no evidence of damages, an essential element of all the claims asserted by the Church, on October 13, 2011. The burden then shifted to the Church to produce some evidence of damages. *See Imkie*, 326 S.W.3d at 343 (citing *Mack Trucks, Inc.*, 206 S.W.3d at 582; *Landers*, 257 S.W.3d at 744)).

The Church responded on October 28. But its response did not assert that its attorney's fees in the adversarial claim constituted damages it could recover in this suit. Nor did the Church provide evidence of the damages to its property or of its attorney's fees in the adversarial proceeding. The Church's live pleading at the time did not seek recovery of attorney's fees in the adversarial proceeding as

12

damages. The trial court heard the motion for summary judgment on November 3 and granted summary judgment on November 4.

It was not until December 2 that the Church filed a "Motion for Reconsideration and Clarification," asserting that Vann had been erroneously included in the summary judgment, and, that attorney's fees incurred in the adversarial claim and closing costs of the loan from CMI constituted actual damages. This response attached: (1) the closing statement for the loan from CMI secured by the Church's property; (2) an affidavit from the Church's attorney concerning fees incurred in both this suit and the adversarial proceeding in the bankruptcy court, including billing records; (3) Lockett's affidavit describing the events made the basis of this suit; and (4) the transcript of Lockett's deposition. The Church, however, did not plead a claim for attorney's fees incurred in the adversarial proceeding until February 13, 2012, when it filed a supplement to its Third Amended Original Petition.

At the time the trial court granted summary judgment in Barnabas's favor, the Church had not filed a response producing some evidence on the challenged element of damages. Summary judgment was thus proper. *See* TEX. R. CIV. P. 166a(i) ("The court *must grant* the motion *unless* the respondent produces summary judgment evidence raising a genuine issue of material fact." (Emphasis added.)); *see Imkie*, 326 S.W.3d at 343. Because the Church's motion for

13

reconsideration was filed after the hearing and after summary judgment was granted, without leave of court, we may not consider the response or the evidence included with the response as grounds for reversing the summary judgment. *See Speck*, 235 S.W.3d at 815 (citing *Benchmark Bank*, 919 S.W.2d at 663); *see also Imkie*, 326 S.W.3d at 343. Additionally, the Church's supplemental pleading was not filed by the seventh day before the summary judgment hearing; it was filed more than three months after the trial court heard and granted the summary judgment. Nothing in the record shows that the Church sought or received leave of court to file a supplemental petition. We therefore cannot consider the amended pleadings adding a damages claim for attorney's fees incurred in the adversarial proceeding. *Mensa-Wilmot*, 312 S.W.3d at 780; *Taylor*, 905 S.W.2d at 745.

The Church did not file a response raising a genuine fact issue on the element of damages before the summary judgment hearing. We do not consider the responses and evidence filed after the hearing and judgment without leave of court in our review of the trial court's summary judgment. Accordingly, we hold that the trial court properly granted Barnabas's summary judgment.

We overrule the Church's third issue as it relates to Barnabas.

14

## Summary Judgment in favor of Vann

### A.     No-evidence Motion for Summary Judgment

In its third issue, the Church contends the trial court erred by granting Vann's no-evidence motion for summary judgment on the element of damages. Vann, however, moved for summary judgment on each element of all of the Church's claims, except for the Church's claim under the Insurance Code, which we address separately below.

Where a party moves for summary judgment on multiple grounds, and the trial court's order granting summary judgment does not specify the ground or grounds on which it was based, a party appealing the order must negate all possible grounds on which the order could have been based. *McCoy v. Rogers*, 240 S.W.3d 267, 271 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.)).  If summary judgment may have been rendered, properly or improperly, on a ground not challenged on appeal, the judgment must be affirmed. *Id.* (citing *Ellis,* 68 S.W.3d at 898); *see also Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990) (proscribing reversal of summary judgment without properly assigned error), *cited in McCoy*, 240 S.W.3d at 271.

Here, Vann moved for summary judgment on multiple no-evidence grounds; Vann challenged each element of each of the Church's claims (other than the Insurance Code claim). The trial court granted summary judgment without specifying the basis. On appeal, the Church has addressed only the element of damages and has not addressed the no-evidence challenge to any of the other elements. Accordingly, we must affirm the no-evidence summary judgment on all claims other than the Insurance Code claim. *See McCoy*, 240 S.W.3d at 271.

## B. Traditional Motion for Summary Judgment

In its fourth issue, the Church contends the trial court erred by granting Vann's traditional motion for summary judgment. Vann moved for summary judgment on the ground that the statutory provision cited by the Church did not create a private cause of action. Neither the Church's response nor supplemental response to Vann's motion for summary judgment addresses this ground for summary judgment or mentions the Insurance Code claim. On appeal, the Church provides no argument or analysis concerning the Insurance Code claim, but merely repeats the following allegation from its petition:

> The Defendants have violated Chapter 843 of the Texas Insurance Code, which states: "a person may not organize or operate a health maintenance organization in this state, . . . without obtaining a certificate of authority." The Defendants never filed an application to receive a certificate of authority from the Texas Insurance Commission. The alleged HMO, Samaritan Community Plan of Houston, Inc. was never created. The specific purpose of borrowing

16

funds from the Plaintiff and collecting capital by Barnabas from the sale of shares was to create the HMO.

Under Rule 166a(c), "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c); *see also McCoy*, 240 S.W.3d at 271 (citing TEX. R. CIV. P. 166a(c) and *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979)) ("We will not consider a ground for reversal that was not expressly presented to the trial court by written motion, answer, or other response to the motion for summary judgment"). Here, the only ground for reversal the Church raises on appeal was not presented to the trial court in a written motion, answer, or other response to the motion for summary judgment. We therefore may not reverse on that ground. *See* TEX. R. CIV. P. 166a(c); *City of Houston*, 589 S.W.2d at 677; *McCoy*, 240 S.W.3d at 271.

We overrule the Church's third and fourth issues as they relate to Vann. Because we have overruled the Church's third issue concerning the no-evidence summary judgments for both Barnabas and Vann, and the Church's fourth issue relating to Vann and the Insurance Code claim, we affirm the trial court's summary judgments. Accordingly, we do not address the remainder of the Church's fourth issue which addresses the propriety of summary judgment for Barnabas on traditional grounds. *See Star–Telegram, Inc.*, 915 S.W.2d at 473; *McCoy*, 240 S.W.3d at 271.

17

**Vann's Request for Sanctions**

Vann filed a supplemental brief seeking a reversal of the trial court's denial of Vann's requested sanctions against the Church's counsel. As part of his motion for summary judgment, Vann sought sanctions under Chapter 10 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001, 10.004 (West 2002) (providing for sanctions for filing pleading for improper purpose, containing frivolous claims, or containing allegations without likely evidentiary support); TEX. R. CIV. P. 13 (providing for sanctions for filing pleading that is not formed after reasonable inquiry, brought in bad faith, or groundless). The trial court denied Vann's request.

Under Rule 25.1 of the Texas Rules of Appellate Procedure, any "party who seeks to alter the trial court's judgment . . . must file a notice of appeal." TEX. R. APP. P. 25.1(c). Unless a party seeking to alter a trial court's judgment files a notice of appeal of its own, the appellate court is not permitted to grant more favorable relief than the trial court except for just cause. *Id.*; *see also Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 171 (Tex. 2004); *Dean v. Lafayette Place (Section One) Council of Co-Owners, Inc.*, 999 S.W.2d 814, 818 (Tex. App.— Houston [1st Dist.] 1999, no pet); *see also Lubbock Cnty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 586 (Tex. 2002) (holding that county seeking to alter

18

trial court's partial summary judgment waived this challenge by failing to file notice of appeal).

Vann did not file a notice of appeal. Accordingly, we cannot alter the judgment to grant more favorable relief than the trial court granted. *See* TEX. R. APP. P. 25.1(c); *Brooks*, 141 S.W.3d at 171.

We overrule Vann's request for sanctions.

## Conclusion

We affirm the trial court's judgment. All pending motions are denied as moot.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.