**Affirmed and Opinion Filed July 30, 2015.**



**In The**
# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-13-01365-CV**

## JOHN C. MCCONNELL, M.D., Appellant
### V.
## COVENTRY HEALTH CARE NATIONAL NETWORK, FIRST HEALTH GROUP CORP., AND LIBERTY MUTUAL INSURANCE COMPANY, Appellees

On Appeal from the 298th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 11-09509

## MEMORANDUM OPINION
Before Justices Bridges, Myers, and Stoddart
Opinion by Justice Stoddart

John C. McConnell, M.D., appeals the trial court's final summary judgment rejecting his causes of action against Coventry Health Care National Network, First Health Group Corp., and Liberty Mutual Insurance Company. In general, McConnell alleged he was wrongfully terminated as a workers' compensation network provider by Coventry,[1] Coventry tortiously interfered with McConnell's business relationships with referring doctors, and Liberty tortiously interfered with McConnell's contract with Coventry. The trial court denied McConnell's motion for continuance of the Coventry summary judgment hearing and granted Coventry's and Liberty's motions for summary judgment.

---

[1] Coventry and First Health are related entities and we will refer to them collectively as Coventry unless it is necessary to distinguish between the parties.

In two broad issues, McConnell argues the trial court erred by granting Coventry's and Liberty's motions for summary judgment. He also complains that the trial court erred by denying his motion for continuance of the hearing on Coventry's motion. We affirm the trial court's judgment.

## BACKGROUND

McConnell, an orthopedic surgeon, entered into a contract with Coventry to become a provider in Coventry's workers' compensation health care network.[2] McConnell agreed to provide health care services to patients covered by insurance carriers, such as Liberty, who contracted with Coventry. The Coventry contract with McConnell contains provisions relating to termination, notice, rights to cure, and appeals of adverse decisions to a review board. Liberty contracted with Coventry for Coventry to provide a list of providers to see patients covered by Liberty's workers' compensation policies. McConnell was one of those providers.

This dispute arises out of comments made by McConnell in his medical records for three patients covered by Liberty. These comments were critical of Liberty and accused it of delaying, disputing, and denying valid claims. In one case, McConnell recommended surgery for a patient, but Liberty initially denied the claim. McConnell stated in the medical record that he would stand by his opinion that the patient was harmed by the delay in surgery and by Liberty's standard business practice of "delay/dispute/denied care." In a second case, Liberty denied the treatment recommended by McConnell and authorized non-surgical treatment after a review of the patient by another doctor. McConnell noted in the medical records his belief that Liberty was acting in bad faith by denying medically necessary surgery. McConnell wrote that the patient's "outcome will likely be worsened because of the carrier's use of standard business practice of dispute/deny/delay care, often supported by opinions of a network of physicians from

---

[2] *See* TEX. INS. CODE ANN. § 1305.004(a)(16) (West Supp. 2014) ("Network" means an organization formed as a health care provider network to provide health care services to injured workers that is certified as required by the insurance code and operates under a contract with an insurance carrier).

–2–

whom carriers can obtain whatever opinions they want." In the third case, McConnell's recommendation of a joint stimulation device was rejected by Liberty. McConnell wrote in the record that he informed the patient that "inappropriate ('bad faith') denials on the part of work comp carriers in Texas are unfortunately endemic. Insurance carriers in Texas freely engage in a standard '3-D' (delay/denial/dispute of care) business strategy."

Liberty's contract with Coventry allowed Liberty to notify Coventry of any "clinical, quality of care, customer service, billing issues or other provider related issues with a Provider." Liberty notified Coventry about McConnell's comments in the patient medical records after each of the three cases described above. Coventry contacted McConnell about each case as described below.

In April 2009, Coventry notified McConnell by letter that Liberty was concerned about his unprofessional comments in the patient's medical record. Coventry advised McConnell that the medical record "is intended to record the objective findings and the results of treatment. The use of medical records to cast aspersions on the motives of the insurance carrier is not acceptable." In August 2009, after the second case, Coventry again notified McConnell of Liberty's complaint and warned, "Should you continue to narrate in your medical records your feelings that the insurance company withholds and delays treatment, your participation in the First Health network will be subject to non-renewal." In October 2009, following the third case, Coventry notified McConnell of Liberty's complaint that "despite a Designated Doctor Exam which contradicted your diagnosis and treatment recommendations, you proceeded with surgery that was also not supported by her MRI results." Coventry warned McConnell that as a member of the network, he had agreed to cooperate with the carrier's medical review program.

Coventry notified McConnell on December 30, 2010 of its intent to terminate McConnell's contract effective April 1, 2011 for material breach. Coventry found that McConnell failed to correct the concerns regarding negative comments about Liberty in his

medical records identified in Coventry's letters following the first two cases, and that McConnell made similar remarks in another patient's records. Coventry gave McConnell the option to file a corrective action plan to cure the breach within 60 days or to file an appeal before the network's advisory review panel within 30 days. McConnell chose to appeal the termination decision. The review panel upheld the decision to remove McConnell as a network provider effective April 1, 2011.

McConnell filed this lawsuit on August 1, 2011. He sued for Coventry for breach of contract and tortious interference with his business relationships, sued Liberty for tortious interference with his contract with Coventry, and sued them both for conspiracy.

On May 9, 2012, Coventry filed a combined traditional and no-evidence motion for summary judgment on the breach of contract and tortious interference with business relations claims raised in McConnell's first amended petition. McConnell responded by filing a second amended petition, a motion for continuance of the summary judgment hearing, and a response to the motion for summary judgment. McConnell's second amended petition dropped the breach of contract claim against Coventry. McConnell sought a continuance of the hearing to allow additional discovery and served notices for several depositions with the motion for continuance. In his response to the motion for summary judgment, McConnell stated that he "amended his pleadings better to conform to the facts, the allegations, and the law [and] dropped his claims for breach of contract. . . ." McConnell asserted, "Coventry argues that it acted within its rights to terminate its contract with McConnell. This is not disputed. Indeed, it is the reason why McConnell amended his pleadings to drop his claim for breach of contract."

The trial court held a hearing on June 29, 2012 and took the motion for summary judgment and the motion for continuance under advisement. Five months later, McConnell amended his petition, without leave of court, to reassert the breach of contract claim against Coventry. McConnell also filed a fourth and fifth amended petition, again without leave of

court, continuing to allege a breach of contract claim against Coventry. Coventry filed special exceptions to each of these amendments arguing that McConnell had abandoned his breach of contract claim and failed to obtain leave of court to file the amended petitions after the hearing on the motion for summary judgment.

Liberty filed a traditional and no-evidence motion for summary judgment on McConnell's claims for tortious interference with McConnell's contract with Coventry, business disparagement, and conspiracy to interfere with the Coventry contract. McConnell timely filed a response to Liberty's motion. Following a hearing, the trial court granted Liberty's motion and ordered that McConnell take nothing from Liberty. Two months later, the trial court denied McConnell's motion for continuance relating to Coventry's motion for summary judgment and denied Coventry's special exceptions to McConnell's third and fourth amended petitions. The trial court rendered a final judgment granting Coventry's motion for summary judgment in its entirety and rendered judgment that McConnell take nothing from Coventry.

### STANDARD OF REVIEW

The standards for reviewing summary judgments are well established and we follow them in reviewing this appeal. *See* TEX. R. CIV. P. 166a; *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985) (summary judgment standards of review); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003) (no-evidence summary judgment standards of review). In reviewing a no-evidence summary judgment motion, we examine the record in the light most favorable to the nonmovant; if the nonmovant presents more than a scintilla of evidence supporting the disputed issue, summary judgment is improper. *King Ranch*, 118 S.W.3d at 750; *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch*, 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). More than a scintilla of evidence exists if it

–5–

would allow reasonable and fair-minded people to differ in their conclusions. *King Ranch*, 118 S.W.3d. at 751 (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). In a traditional motion for summary judgment, the party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548; *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). In deciding whether a disputed material fact issue exists, precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548-49. Further, every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

ANALYSIS

McConnell challenges the summary judgments granted in favor of Coventry and Liberty. As to Coventry, he contends the trial court could not render summary judgment on his breach of contract claim because he nonsuited that claim before the summary judgment hearing and reasserted the claim in amended pleadings filed after the summary judgment hearing. In addition, McConnell argues the trial court erred by granting summary judgment on his tortious interference with business relationships claim because the evidence raised fact issues on that claim. Lastly, he argues the trial court should have granted a continuance before granting the summary judgment.

As to Liberty, McConnell contends the trial court erred by granting summary judgment on his tortious interference with contract claim because there were genuine issues of material fact as to Liberty's intent and whether Liberty was justified or privileged to act. McConnell argues there are material issues of fact regarding his business disparagement and conspiracy claims.

## A. Claims against Coventry

### 1. Breach of Contract

After Coventry moved for summary judgment on the breach of contract and other claims

alleged in the live pleading, McConnell amended his petition to drop the breach of contract claim. McConnell argues that the breach of contract claim was not before the court at the time of the summary judgment hearing and the court could not render judgment on that claim. McConnell further contends he could freely amend his petition after the summary judgment hearing to reassert breach of contract, effectively avoiding summary judgment on that claim.

Rule 63 provides that amended pleadings may be filed within seven days of trial only with leave of court. TEX. R. CIV. P. 63. A summary judgment hearing is a trial for purposes of rule 63. *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 653 (Tex. App.—Dallas 2013, pet. denied); *McIntyre v. Wilson*, 50 S.W.3d 674, 684 (Tex. App.—Dallas 2001, pet. denied). Rule 166a(c) requires pleadings filed after the summary judgment hearing and before the judgment must be filed with permission of the court. TEX. R. CIV. P. 166a(c) (the summary judgment sought in the motion shall be rendered forthwith if, among other things, "the pleadings, . . . on file at the time of the hearing, or filed thereafter and before judgment *with permission of the court*," show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law) (emphasis added).

If amended pleadings are filed within seven days *before* a summary judgment hearing, a presumption arises that leave was granted for the amendment if the judgment states that all pleadings were considered, the record does not indicate the pleadings were not considered, and the opponent does not show surprise. *Mensa-Wilmot v. Smith Intern., Inc.*, 312 S.W.3d 771, 778 (Tex. App.—Houston [1st Dist.] 2009, no pet.). But no presumption arises where the amended pleadings are filed *after the summary judgment hearing*. *Id.* If the amendment was filed after the summary judgment hearing and before the court renders judgment, the record must show the trial court granted leave to amend the pleadings. *DMC Valley Ranch, L.L.C. v. HPSC, Inc.*, 315 S.W.3d 898, 902-03 (Tex. App.—Dallas 2010, no pet.) ("If a summary-judgment nonmovant files an amended pleading after the summary-judgment hearing but before the judgment is

signed, there is no presumption that leave was granted; the record must affirmatively show that the trial court granted leave."). "Unless the record shows that the trial court granted leave to file the pleading, the appellate court will assume leave was denied." *Austin v. Countrywide Homes Loans*, 261 S.W.3d 68, 76 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "Failure to obtain leave waives the newly pleaded issues." *DMC Valley Ranch*, 315 S.W.3d at 903; *see also Mensa–Wilmot*, 312 S.W.3d at 778–79.

McConnell's amended pleadings reasserting the breach of contract claim against Coventry were filed five, six, and nine months after the summary judgment hearing. Thus, no presumption arises that leave was granted to file the amendments.[3] *See DMC Valley Ranch*, 315 S.W.3d at 902; *Mensa-Wilmot*, 312 S.W.3d at 778. Therefore, the record must affirmatively show the trial court granted leave to file the amended pleadings. *DMC Valley Ranch*, 315 S.W.3d at 902.

The record does not show McConnell requested leave of court to file amended pleadings against Coventry after the summary judgment hearing, nor is there an express order granting leave to file the amended pleadings. The final judgment does not indicate the trial court granted leave for the amendments. It states the trial court considered only "the pleadings on file at the time of the hearing," thus indicating the trial court did not consider the later filed amendments. *See John C. Flood*, 408 S.W.3d at 654 ("By reciting that it considered the "timely filed" pleadings, not "all of the pleadings," the trial court indicated it did not consider appellants' amended answer in the course of deciding appellee's summary judgment motions."); *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 323 (Tex. App.—Houston [1st Dist.] 1995, no writ) (trial court did not grant leave to file pleadings late where summary judgment order stated

---

[3] McConnell asserts he was entitled to a presumption that leave was granted because Coventry failed to show surprise. *See Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988). This presumption applies to amended pleadings filed within seven days before trial or the summary judgment hearing. It does not apply to amended pleadings filed after trial or the summary judgment hearing. *John C. Flood*, 408 S.W.3d at 654; *DMC Valley Ranch*, 315 S.W.3d at 902.

that court considered "*prior* pleadings referenced in the motion for summary judgment").[4]

McConnell argues the denial of Coventry's special exceptions to the amended pleadings indicates the trial court considered those amendments. However, the trial court simply denied the special exceptions and did not affirmatively grant McConnell leave to amend his pleadings.

The breach of contract and other claims against Coventry alleged in the third, fourth, and fifth amended petitions were not properly before the trial court. *See McIntyre*, 50 S.W.3d at 684; *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 841 (Tex. App.—Dallas 2008, no pet.) (plaintiff waived right to rely on discovery rule as alleged in amended petition filed without leave of court after submission date of motion for summary judgment). We conclude the trial court did not grant more relief than requested by granting final summary judgment that McConnell take nothing on his claims against Coventry.

### 2.     Tortious Interference with Prospective Business Relationships

The only other claim alleged against Coventry in the second amended petition and challenged on appeal is tortious interference with prospective business relationships. Coventry moved for summary judgment asserting its conduct was privileged under the contract and that McConnell could not meet the elements of that cause of action.

McConnell argues that Coventry's motion for summary judgment is ambiguous about raising no-evidence or traditional grounds for summary judgment. There is some question whether Coventry's motion is properly a no-evidence motion under rule 166a(i). TEX. R. CIV. P. 166a(i); *see Jose Fuentes Co. v. Alfaro*, 418 S.W.3d 280, 283, 284–85 (Tex. App.—Dallas 2013, pet. denied) (en banc) (motion stating plaintiff had no evidence to support "one or more" of the elements of its claims was insufficient as no-evidence motion). Although Coventry's motion is titled "traditional and no evidence motion[] for summary judgment," Coventry cites only the

---

[4] In *DMC Valley Ranch*, the summary judgment order recited that the trial court considered "all of the pleadings" not just the timely filed pleadings, thus indicating the court considered the late-filed pleadings. 315 S.W.3d at 903.

standard for traditional motions and excludes any discussion of the standard for no-evidence motions for summary judgments.[5] Rule 166a(i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case. TEX. R. CIV. P. 166a, 1997 cmt. "A no-evidence motion that only generally challenges the sufficiency of the non-movant's case and fails to state the specific elements that the movant contends lack supporting evidence is fundamentally defective and cannot support summary judgment as a matter of law." *Jose Fuentes Co.*, 418 S.W.3d at 283; *see also N. Texas Mun. Water Dist. v. Ball*, No. 05-14-00393-CV, 2015 WL 1941514, at *4 (Tex. App.—Dallas Apr. 30, 2015, no. pet. h.). However, because the motion raises traditional grounds for summary judgment, we resolve the issue under the standards for traditional motions for summary judgment and do not decide whether this motion is sufficient as a no-evidence motion under rule 166a(i).

To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). The concepts of justification and privilege are subsumed in the plaintiff's proof of these elements, except insofar as they may be defenses to the independent tortiousness of the defendant's conduct. *Wal-Mart Stores, Inc. v. Sturges*, 52

---

[5] Specifically, the motion discusses the burden of a defendant moving for traditional summary judgment to conclusively negate one or more elements of the plaintiff's cause or to conclusively prove each element of an affirmative defense. Other than the title, the only other potential reference to a no-evidence motion is the phrase "plaintiff cannot meet the elements" of this cause of action following the listing of the elements of tortious interference with prospective business relationships. The discussion on tortious interference ends with the conclusory statement that "because plaintiff has failed to provide legal or evidentiary support for" his claim, the motion should be granted on that claim.

S.W.3d 711, 726–27 (Tex. 2001). The plaintiff must prove that the defendant's conduct would be actionable under a recognized tort. *Id.* at 726.

Coventry argued in the motion for summary judgment that:

McConnell's decision to breach the contract by refusing to work cooperatively within the managed care network environment resulted in the termination of his contract. The consequences of his breach resulted in termination of the [contract], allegedly fewer patient referrals, and also allegedly, a decrease in his patient load. [Coventry] was privileged under the terms of the [contract] to terminate the contract. Acting under a privilege is a valid defense to a claim of tortious interference.

Although Coventry incorrectly identified this ground as a privilege defense, *see Sturges*, 52 S.W.3d at 726–27, the substance of the motion seeks to negate the element that Coventry's conduct was independently tortious. *See Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997) (defendant entitled to summary judgment if it conclusively negates one essential element of plaintiff's cause of action). Thus, the motion raised the ground that Coventry's conduct was not independently tortious.

McConnell alleged that Coventry told other network providers that McConnell could not see patients after his termination even as an out-of-network provider. McConnell also alleged Coventry interfered with his business relationship with his patients by attempting to dictate what McConnell could say in the patients' medical records. Neither allegation identifies conduct that would be actionable under a recognized tort. *See Sturges*, 52 S.W.3d at 726 (plaintiff must prove "defendant's conduct would be actionable under a recognized tort"). In general, conduct pursuant to a valid contract cannot not be said to be independently tortious or wrongful. The summary judgment evidence indicates that the conduct McConnell complains about was based on Coventry's exercise of its legal rights under its contract with McConnell. *See Calvillo v. Gonzalez*, 922 S.W.2d 928, 929 (Tex. 1996) (per curiam) (defendant's exclusive contract with hospital justified as a matter of law his interference with another party's prospective business relations); *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904 (Tex. App.—Dallas 1989, writ denied)

–11–

(enforcing or complying with one's own contract does not constitute unjustifiable interference with another's contract). Coventry states its contract required treating doctors, except in emergencies, to refer patients to other network providers where available. Further, Coventry's assertion that medical records were only for objective medical findings and the results of treatment was based on McConnell's agreement to cooperate with the carrier's medical review programs and to comply with all applicable carrier policies and procedures.

McConnell contends, however, that Coventry breached the contract by terminating him. But supposing Coventry did breach the contract, its conduct would not be actionable under a recognized tort. In general, the mere failure to perform the terms of a contract is a breach of contract, not a tort. *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex. 1992), *superseded by statute on other grounds as stated in Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212 (Tex. 2002). A willful breach of contract is not a tort: "Even if the breach is malicious, intentional or capricious, exemplary damages may not be recovered unless a distinct tort is alleged and proved." *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981). Therefore, even if Coventry breached the contract, it's conduct would not be independently tortious.

McConnell asserts summary judgment was improper because Coventry's motivations are matters of intent or knowledge and not appropriate for summary judgment. However, "Improper motives cannot transform lawful actions into actionable torts." *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 211 (Tex. 1996). "An actor's personal motivation in doing what he has a legal right to do is irrelevant." *Sturges*, 52 S.W.3d at 724. Coventry's intent or motivation in acting under the contract—even if it were in breach of the contract—would not transform those actions into conduct actionable under a recognized tort. Therefore, Coventry's motivation does not raise a genuine issue of material fact in this case.

McConnell's remaining argument is that he amended the claim after the summary

–12–

judgment hearing to raise different factual allegations not addressed by Coventry's motion.[6] But as discussed above, those amended petitions were filed without leave of court after the hearing on the motion for summary judgment. As such, those petitions were not properly filed and the additional allegations were not before the court. *See John C. Flood*, 408 S.W.3d at 655; *Rivera*, 262 S.W.3d at 841.

Here, Coventry proved its conduct was based on the exercise of its legal rights under the contract with McConnell and therefore was not independently tortious. Because the conduct was not independently tortious, Coventry conclusively negated an essential element of McConnell's tortious interference with prospective business relations claim and was entitled to summary judgment. We conclude the trial court did not err by granting summary judgment on this claim.

### 3. Continuance

McConnell alleges the trial court abused its discretion by denying his motion for continuance of the summary judgment hearing. We review a trial court's decision to grant or deny a motion for continuance of a summary judgment hearing for an abuse of discretion. *See Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 696 (Tex. App.—Dallas 2008, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). In considering whether the trial court abused its discretion, we consider such factors as the length of time the case had been on file before the hearing, the materiality of the discovery sought, whether the party seeking the continuance exercised due diligence in obtaining the discovery, and what the party expected to prove. *Cooper*, 254 S.W.3d at 696.

Coventry filed its motion for summary judgment on May 9, 2012, nine months after McConnell filed this suit. The summary judgment hearing was held June 29, 2012, fifty-one days

---

[6] The later amended petitions alleged that Coventry tortiously interfered with McConnell's existing contract with another health care network, Concentra.

–13–

after Coventry filed the motion.  "[G]enerally, it is not an abuse of discretion to deny a motion for continuance when the party has received the twenty-one days' notice required by rule 166a(c)."  *Id.* at 697.

McConnell filed his verified motion for continuance on June 12, 2012, approximately thirty days after he received notice of the summary judgment hearing.  The same day, he noticed depositions for six Coventry witnesses with no agreement from opposing counsel regarding deposition dates.  McConnell did not explain why only one deposition was conducted in the nine months the case was pending or why the depositions he sought were not scheduled during that time. McConnell's counsel stated in the motion that, "Discovery in this case has been minimal and there is much yet to be accomplished."  After nine months, the trial court could have reasonably concluded McConnell failed to exercise due diligence to obtain the necessary discovery.  *See Rivera*, 262 S.W.3d at 843–44 (trial court did not abuse its discretion by denying continuance where motion failed to describe efforts to obtain discovery or why discovery could not be conducted in six-month period before filing of motion for summary judgment).

Furthermore, the trial court did not rule on the summary judgment motion until August 19, 2013.  McConnell had several months after the summary judgment hearing during which he obtained discovery and could have requested leave to file a supplemental response Coventry's motion for summary judgment incorporating any additional evidence he wished the trial court to consider. He failed to do so.

We conclude the trial court did not abuse its discretion by denying the motion for continuance.  *See Cooper*, 254 S.W.3d at 696.

### 4.    Summary

We conclude McConnell's claims against Coventry alleged in amended pleadings filed without leave of court after the summary judgment hearing were not properly before the trial court.  We conclude the summary judgment evidence established that Coventry was entitled to

–14–

judgment as a matter of law on the tortious interference with prospective business relations claim and the trial court did not abuse its discretion by denying McConnell's motion for continuance. Thus, the trial court did not err by granting a take nothing summary judgment on McConnell's claims against Coventry. We overrule McConnell's first issue.

## B. Claims against Liberty

McConnell alleged Liberty tortiously interfered with his contract with Coventry, disparaged his business, and conspired with Coventry to terminate McConnell's contract with Coventry. Liberty filed a combined traditional and no-evidence motion for summary judgment on these claims, which the trial court granted.

### 1. Tortious Interference with Contract

McConnell contends that Liberty's complaints to Coventry about the comments he wrote in his patients' medical records tortiously interfered with his contract with Coventry. Liberty moved for summary judgment on the affirmative defense of justification or privilege because it was exercising its rights under its contract with Coventry.

To recover for tortious interference with an existing contract, a plaintiff must prove: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996). Justification or privilege is an affirmative defense to a claim for tortious interference with contract. *Id*. The justification defense is based on either the exercise of one's own legal rights or a good-faith claim to a colorable legal right. *Id.* at 211. If the defendant establishes a legal right to interfere with the contract as a matter of law, he establishes the justification defense. *Id.* The motivation behind assertion of that right is irrelevant. *Id.* "Improper motives cannot transform lawful actions into actionable torts." *Id.* Good faith is immaterial when the defendant establishes a legal right to act as it did. *Id.* at 212.

Whether conduct is privileged or justified, or merely the exercise of a colorable right, is a question of law for the court. *Prudential Ins. Co. of Am. v. Fin. Review Servs, Inc.*, 29 S.W.3d 74, 80 (Tex. 2000) (citing *Tex. Beef Cattle*, 921 S.W.2d at 211). Generally, justification is established as a matter of law when the acts the plaintiff complains of as tortious interference with contract are merely the defendant's exercise of its own contractual rights. *Id.* at 81; *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 431 (Tex. 1997). Enforcing or complying with one's own valid contract does not constitute unjustifiable interference with another's contract. *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904 (Tex. App.—Dallas 1989, writ denied); *Maynard v. Caballero*, 752 S.W.2d 719, 721 (Tex. App.—El Paso 1988, writ denied) ("An action to protect one's contractual right is also ordinarily justification for interference with another's contract."). Interference with contractual relations is privileged where the party possesses an equal or superior interest to that of the plaintiff in the subject matter. *Schoellkopf*, 778 S.W.2d at 904 (citing *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 91 (Tex. 1976)).

Liberty's contract with Coventry allowed Liberty to notify Coventry of issues with providers and seek Coventry's resolution of those issues. The contract provides in part:

> [Liberty] may identify clinical, quality of care, customer service, billing issues or other provider related issues with a Provider. These issues or "incidents" shall be screened internally by [Liberty] to remove duplicates and ensure merit. Once merit is established, the incident will be forwarded to Coventry for resolution.

The summary judgment evidence is clear that Liberty identified issues with McConnell's comments placed in patient medical reports and notified Coventry as allowed by the contract. Because Liberty did exactly what its contract with Coventry allowed it to do, we conclude Liberty established its justification defense as a matter of law and the trial court did not err by granting summary judgment on the tortious interference with contract claim.

McConnell also alleged business disparagement in support of its tortious interference with contract claim against Liberty. Business disparagement is a means of interference with existing contracts that is tortious in itself. *Prudential Ins. Co.*, 29 S.W.3d at 81–82. However, as

–16–

we discuss in the next session, the trial court properly granted summary judgment on the business disparagement claim and it cannot therefore support the tortious interference with contract claim.

### 2. Business Disparagement

The basis of the business disparagement claim is Liberty's statement to Coventry that McConnell's comments in the patient's medical records were "unprofessional" and "slanderous." McConnell argues this characterization of his comments constituted business disparagement.

To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987); *see also In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015). Business disparagement and defamation are similar in that both torts involve liability for publication to third parties of false statements affecting plaintiff. *Lipsky*, 460 S.W.3d at 591; *Hurlbut*, 749 S.W.2d at 766. While defamation protects the personal reputation of the injured party, business disparagement protects the economic interests of the injured party from pecuniary loss. *Hurlbut*, 749 S.W.2d at 766. Business disparagement "does not seek to redress dignitary harms to the business owner, but rather redresses aspersions cast on the business's commercial product or activity that diminish[] those interests." *Lipsky*, 460 S.W.3d at 591. Liberty's no-evidence motion for summary judgment attacked the elements of falsity, malice, and special damages.

Whether the words used are reasonably capable of defamatory meaning is a question of law for the court. *See Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013); *Musser v. Smith Protective Servs, Inc.*, 723 S.W.2d 653, 654 (Tex. 1987). To be actionable, a statement must assert an objectively verifiable fact rather than an opinion. *See Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 874–75 (Tex. App.—Dallas 2014, no pet.); *see also Neely v. Wilson*,

418 S.W.3d 52, 62 (Tex. 2013) ("[S]tatements that are not verifiable as false cannot form the basis of a defamation claim."). We classify a statement as fact or opinion based on the statement's verifiability and the entire context in which the statement was made. *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002). Whether a statement is a statement of fact or opinion is also a question of law. *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.).

We conclude Liberty's statement that McConnell's comments were "unprofessional" is merely opinion and not an objectively verifiable fact. *See Neely*, 418 S.W.3d at 62; *Am. Heritage*, 436 S.W.3d at 875. We also conclude Liberty's statement that McConnell's comments were "slanderous" is not actionable because it does not impugn McConnell's fitness for proper conduct as a physician. *See Hancock*, 400 S.W.3d at 66–67 (letter stating to doctor lacked veracity and dealt in half-truths did not injure doctor in his profession as a physician and was not defamatory per se); *Shipp v. Malouf*, 439 S.W.3d 432, 441 (Tex. App.—Dallas 2014, pet. denied) (statement that dentist was personally bankrupt not defamatory because did not affect his fitness to practice dentistry), *disapproved on other grounds by Lipsky*, 460 S.W.3d at 591. As the supreme court recognized in *Hancock*, "The specific trait of truthfulness is not peculiar or unique to being a physician." *Hancock*, 400 S.W.3d at 67. "The words must touch the plaintiff in a way harmful to one engaged in his particular business or profession." *Shipp*, 439 S.W.3d at 441. Thus, Liberty's statement that McConnell's comments were "slanderous" did not disparage McConnell's business of practicing medicine. *See id.*; *Lipsky*, 460 S.W.3d at 592; *Hurlbut*, 749 S.W.2d at 766.

McConnell failed to present summary judgment raising a genuine issue of material fact on the falsity element of his business disparagement claim. Therefore, the trial court did not err by granting summary judgment on that claim. TEX. R. CIV. P. 166a(i).

### 3. Conspiracy

McConnell alleged that Liberty and Coventry conspired to tortiously interfere with his contract with Coventry and to disparage his business. However, on appeal he does not challenge summary judgment for Coventry on his conspiracy claim and we have concluded the trial court properly granted summary judgment for Liberty on McConnell's claims. Accordingly, McConnell has failed to show reversible error in granting summary judgment on his conspiracy claim. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997) (because summary judgment on tort claims was proper, summary judgment on conspiracy claim also proper).

### 4. Summary

We conclude Liberty established its justification defense to tortious interference with contract as a matter of law, McConnell failed to present summary judgment evidence raising a genuine issue of material fact on the falsity element of his business disparagement claim, and no underlying tort supports the conspiracy claim against Liberty. Thus, the trial court did not err by granting a take nothing summary judgment on McConnell's claims against Liberty. We overrule McConnell's second issue.

### CONCLUSION

The trial court did not err by granting summary judgment for Coventry and for Liberty. We have overruled McConnell's issues on appeal. Accordingly, we affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

131365F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN C. MCCONNELL, M.D., Appellant

No. 05-13-01365-CV         V.

COVENTRY HEALTH CARE NATIONAL
NETWORK, FIRST HEALTH GROUP
CORP., AND LIBERTY MUTUAL
INSURANCE COMPANY, Appellees

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 11-09509.
Opinion delivered by Justice Stoddart.
Justices Bridges and Myers participating.

        In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

        It is **ORDERED** that appellees COVENTRY HEALTH CARE NATIONAL
NETWORK, FIRST HEALTH GROUP CORP., AND LIBERTY MUTUAL INSURANCE
COMPANY recover their costs of this appeal from appellant JOHN C. MCCONNELL, M.D..

Judgment entered this 30th day of July, 2015.